IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS P. JOHNSON, III,

    Plaintiff,

v.                                              Civil Action No.: PJM-23-2015

WILLIAM G. VOELP,

    Defendant.

## MEMORANDUM ORDER

Plaintiff Thomas P. Johnson, III, has filed a pleading entitled "Pro Se Complaint for Preliminary Injunction—TRO—FRCP 65 et seq Filed Simultaneously with Motion."[1] ECF No. 1. This filing appears to seek injunctive relief, and/or a temporary restraining order ("TRO"), against the Maryland State Board of Elections ("SBE") based on allegedly unconstitutional actions taken against Johnson. *Id.*

Specifically, Johnson states that he ran for a Montgomery County Circuit Court judgeship in 2020 and 2022. *Id.* at 1. He did so because he felt strongly that the Montgomery County Circuit Court needed a black male on the bench. *Id.* at 2. He states that he made "personal loans to himself" to finance his campaigns and took no outside money. *Id.* The crux of Johnson's filing appears to pertain to the conclusion of his 2022 campaign, when his campaign treasurer "requested permission by SBE to close out Plaintiff's campaign account." *Id.* at 4. At that time, his account had a balance of $433.11 in unused funds. *Id.* That balance was then used to "repay [Plaintiff] the outstanding personal loan debt made to his campaign." *Id.* at 5.

---

[1] Although the document's title indicates an additional Motion was filed, the docket does not reflect such a "simultaneously" filed Motion.

What happened next is not entirely clear from Johnson's statement of facts, but it appears that the SBE informed Johnson that the outstanding balance in his account could not be used to repay a personal loan under Maryland election law. *Id.* Thereafter, "on or about May 25, 2023," the SBE informed Johnson that his campaign account would be audited. *Id.* Johnson argues that this audit is improper because both he and his campaign treasurer have "provided more than adequate responses to SBE's questions." *Id.* He also maintains that he and his campaign treasurer have not "been given the opportunity to participate in SBE's audit." *Id.* at 6.

On July 19, 2023, Johnson learned that the SBE had filed a request for criminal charges against him based on these alleged campaign finance violations. *Id.* Johnson purportedly learned of these charges when a state prosecutor called him to let him know that the State would not be moving forward with prosecution. *Id.* He states that these "actions were taken to intentionally harass and harm Plaintiff's public reputation." *Id.*

Based on the foregoing facts,

> Plaintiff contends that SBE audit and referral to the Maryland's State Prosecutor was an abuse to disgorge money out of Plaintiff's pocket, the loan balance made to his campaign. Moreover, SBE is in clear violation of Plaintiff's U.S. Constitution rights. Specifically, 'Excessive Fine Clause' of the U.S. CONST. VIII; SBE has denied Plaintiff's input and participation in the audit, a violation of U.S. CONST. XIV, 1: ... 'Due Process and Equal Protection Clause ...'

*Id.* at 7. Johnson avers that, if an injunction/TRO is not issued by this Court, he "will be subjected to fines at SBE's discretion." *Id.* at 15. Johnson maintains that "[n]o suitable monetary remedy exists to stop SBE's unlawful bad acts of threatening Plaintiff with fines." *Id.* at 17. Thus, instead of monetary damages, he makes the following request from this Court:

> To maintain the status quo, SBE must be prohibited from preventing Plaintiff full participation in a campaign audit. SBE must give Plaintiff a hearing to resolve a [simple] dispute. SBE must communicate with Ms. Bowman,

> Plaintiff's treasurer, so as to assist with providing answers that will allow for the closing out Plaintiff's campaign account. S[B]E must recognize the money that funded Plaintiff's campaign was a personal loan. Any balance was to be paid back to Plaintiff. SBE must stop filing harassing baseless claims with Maryland's State Prosecutor's Office where Plaintiff made a personal loan to his campaign.

*Id.* at 20. He seeks injunctive relief and/or a TRO from the Court implementing the above-listed relief. *Id.*

To obtain injunctive relief or a TRO, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). As a TRO is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To meet the first requirement, the plaintiff must "clearly demonstrate that he will *likely succeed* on the merits," rather than raise a mere "grave or serious question for litigation." *Id.* at 346–47 (emphasis in the original). Simply "providing sufficient factual allegations to meet the [Fed. R. Civ. P.] 12(b)(6) standard of *Twombly* and *Iqbal*" does not meet the rigorous standard required under the *Winter* and *Real Truth* decisions. *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2012). To establish irreparable harm, the plaintiff must show that he is suffering actual and imminent harm, not just a mere possibility, and that the harm is truly irreparable and cannot be remedied at a later time with money damages. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). Irreparable harm "is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable*

*Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2nd Cir. 1973)). When a TRO will "adversely affect a public interest . . . the court may . . . withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982). In fact, "courts . . . should pay particular regard for the public consequences in employing th[is] extraordinary remedy." *Id.* at 312. In addition to the public interest determination, the balance of equities must tip in favor of the movant in order for a TRO to be granted. *Winter*, 555 U.S. at 20. Not only must courts weigh any potential harm to the nonmoving party, but also the chance of harm to any interested person, as well as any potential harm to the public. *Continental Group Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356–57 (3d Cir. 1980).

Johnson has failed to satisfy the factors necessary to obtain the extraordinary relief of a preliminary injunction or TRO. His bald assertions that his constitutional rights have been violated are insufficient to demonstrate a likelihood of success on the merits. Based on the information proffered by Johnson, the Court is not even certain that a federal question is present here such that the Court has jurisdiction to hear these claims, let alone that Johnson would succeed on the merits if this case were to proceed. Further, Johnson's assertions that, without the intervention of this Court, he may be subjected to fines does not establish irreparable harm. Johnson also puts forth no reason why the specific relief he seeks is in the public interest. In sum, Johnson fails to demonstrate his entitlement to the extraordinary remedy of injunctive relief or a TRO, and as such, the request is denied.

All relief sought by Johnson has now been denied. Indeed, based on the styling of Johnson's pleading as a "Pro Se Complaint for Preliminary Injunction—TRO—FRCP 65 et seq

…" it is not clear to this Court if Johnson intends for his case to proceed beyond this point. However, because Johnson proceeds pro se, he will be afforded an opportunity to amend the Complaint if he decides to do so. *See Johnson v. Silver*, 742 F.2d 823, 825 (4th Cir. 1984).

In amending his Complaint, Johnson is forewarned that, as a threshold matter, the question remains whether this Court even has jurisdiction to hear his claims. Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); accord *Hertz v. Friend*, 599 U.S. 77, 95, 130 S.Ct. 1181, 1194 (2010); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

Under 28 U.S.C. § 1332(a), a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. The statute "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011), citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

5

Here, there is no diversity of citizenship between the parties since both parties are identified as residing in Maryland, and no amount in controversy is stated. Further, even affording the Complaint a very liberal construction, Johnson has not clearly stated a federal claim.

Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and must consist of "more than labels and conclusions," since "'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 561.

Moreover, under Fed. R. Civ. P. 8(a), a pleading which sets forth a claim for relief, shall contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought.

Each "allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Court has thoroughly examined the Complaint and finds it does not comply with federal pleading requirements. The information provided does not clearly invoke this Court's jurisdiction, nor does it make clear what claim Johnson is attempting to pursue, or what relief he seeks now that his request for injunctive relief has been denied. If, even after affording the

Complaint a generous construction, the Court is unable to determine the precise nature and jurisdictional basis of the claim, Defendants as well are going to encounter difficulties in attempting to answer the Complaint. It is well-settled law that the allegations of a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted).

All of this said, Johnson shall be afforded the opportunity to amend his Complaint to set forth brief, concise, and clear factual allegations in compliance with Fed. R. Civ. P. 8(a); the name or names the Defendant(s), describing their supposed involvement in this matter; the jurisdictional basis for this claim to proceed; and the precise relief sought. Johnson is reminded that any amended complaint would replace the current Complaint. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (noting exception for purposes of appellate review of claims dismissed in original complaint that were not included in amended complaint)). Accordingly, if he chooses to file an amended complaint, Johnson must include anew all allegations against each Defendant named so that the amended complaint will stand alone as the sole complaint in this case.

Accordingly, Johnson's request for injunctive relief (ECF No. 1) is DENIED. He is GRANTED 28 days from the date of this Order to file an Amended Complaint as directed herein, if indeed he wishes to proceed with the case.

A separate Order will ISSUE.

September 29, 2023

/s/ PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE